# IN THE COURT OF APPEALS OF IOWA

No. 15-0911
Filed June 29, 2016

**BRENT LEE SANER,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____

      Appeal from the Iowa District Court for Des Moines County, John G. Linn,

Judge.

      Brent Lee Saner appeals the denial of his application for postconviction

relief. **AFFIRMED.**

      Curtis Dial of the Law Office of Curtis Dial, Keokuk, for appellant.

      Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant

Attorney General, for appellee State.

      Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

This appeal concerns Brent Lee Saner's decade-old murder conviction. Saner alleges he received constitutionally-deficient legal representation at trial because his attorney failed to object to the introduction of statements made during a police interview relating to Saner's prior bad acts and his credibility. Saner sought postconviction relief (PCR) on this basis, among others, but the district court denied the PCR application. The propriety of that ruling is before us on appeal.

**I. Background Facts and Proceedings.**

Saner was convicted of murder for his role in the 2004 killing of Michael Harper Jr. After this court affirmed his conviction on direct appeal, *see State v. Saner*, No. 05-0527, 2006 WL 3613680, at *1 (Iowa Ct. App. Dec. 13, 2006), Saner filed his pro se PCR application in June 2007, alleging ineffective assistance of counsel. The case languished for seven years. In July 2014, Saner's court-appointed counsel filed an amended application, alleging three bases for PCR. The matter was submitted on briefs to the PCR court on December 31, 2014. In its April 30, 2015 ruling, the PCR court found Saner's claims were without merit and dismissed his PCR application. Saner filed a timely appeal challenging the denial of PCR on one of the grounds raised before the PCR court. He claims his trial counsel was ineffective by failing to object to statements made during a police interview concerning Saner's prior bad acts and credibility.

**II. Scope and Standard of Review.**

We typically review the denial of PCR for errors at law. *See Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010). However, where—as here—the ground for PCR is based on ineffective assistance of counsel, our review is de novo. *See State v. Ary*, 877 N.W.2d 686, 704 (Iowa 2016). In order to prevail, Saner must show by a preponderance of the evidence that "counsel failed to perform an essential duty and prejudice resulted." *Id.* He must also show "a reasonable probability that, but for counsel's failure to perform an essential duty, the result of the proceeding would have been different." *Id.* at 705. If he fails to prove either of these requirements, his ineffective-assistance claim fails. *See State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012).

**III. Ineffective Assistance of Counsel.**

On appeal, Saner claims his trial counsel had a duty to object to statements concerning his prior bad acts and his credibility that were introduced through a recorded interview with law enforcement. During that interview, Officer McIntyre called Saner's version of events a lie and stated that "[e]very time I've ever talked to you, you've lied," and "even the previous incidents that we've dealt with before, you lied to me." Saner claims counsel had a duty to object to the statements or request that they be redacted.

In denying Saner's claim, the PCR court did not address the first element of the ineffective-assistance test because it found Saner was unable to prove he was prejudiced by the admission of the statements due to the overwhelming evidence of his guilt. Although Saner claims the statements impacted his credibility as a witness, due to the overwhelming evidence of Saner's guilt, we,

like the PCR court, are unable to find any likelihood the outcome at trial would have been different if counsel had made a successful objection or had the statements redacted. Officer McIntyre's claim that Saner was lying and had lied in previous dealings was not more detrimental to Saner's case than Saner's own trial testimony:

> Q. The bottom line, Mr. Saner, is that you saw or you were there whenever Mikey Harper was stabbed 111 times; correct? A. Correct.
> Q. You held his feet while that happened? A. Correct.
> Q. That's what you're telling us? A. Yes.
> Q. There has also been a suggestion in this trial that you stabbed him too? A. That has been suggested.
> Q. You're denying that; correct? A. Correct.
> Q. Taking you at your word with what you said, you held his feet while he was stabbed; correct? A. Correct.
> Q. And you held him down while Will Lucas would have choked him to death? A. Correct.
> Q. You never saw anything going on not less than one foot away? Is that what you're trying to tell us? A. Correct. Mine and [Lucas]'s back were to each other.
> Q. How long were you in the woods? A. I don't know how long we was in there.
> Q. You were there for fifteen to twenty minutes; correct? A. With [Lucas] and [Harper], yes.
> . . . .
> Q. You actually saw the knife in [Lucas]'s right hand; is that right? A. That's right.
> Q. You told the police; is that true? A. True.
> Q. So you saw the knife in his hand while you were on him? A. I didn't see it when I was holding [Harper] down, no.
> Q. You saw it right before? A. Correct.
> Q. [Harper] was laying on his back? A. Correct.
> Q. And you saw [Lucas] with the knife? A. Correct.
> Q. How long were you on his legs after you saw the knife? A. About fifteen or twenty minutes.
> Q. So you saw the knife in [Lucas]'s hands, and you still stayed on his legs for fifteen to twenty minutes? A. I didn't know it was a knife at the time.
> Q. You said you saw the knife in [Lucas]'s right hand? A. Yes. When he pulled it out of his pocket and handed it to me.
> Q. You were still on top of [Harper] at that point in time; is that right? A. Right.

The jury could have found Saner's claim that he was not aware that Lucas was stabbing Harper was not credible considering that Saner was holding Harper down for approximately fifteen to twenty minutes and Harper received 111 stab wounds. Another witness who was at the scene but some distance from Lucas, Harper, and Saner testified she heard Harper scream "let me go" or "let me live." Additionally, Saner confessed his involvement in the murder to a fellow prisoner in jail, who testified against Saner at trial.

Under the facts before us, we are unable to find a reasonable probability that the result would have been different if trial counsel had objected to the evidence. Because Saner cannot prove the prejudice prong of the ineffective-assistance test, his claim fails. The PCR court properly denied this claim and dismissed Saner's PCR application. Accordingly, we affirm.

**AFFIRMED.**