# IN THE COURT OF APPEALS OF IOWA

No. 17-0288
Filed February 21, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ANTAVIEON CHYROME JACKSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

Defendant appeals his conviction for sexual abuse in the third degree.
**AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary C. Miller, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., Tabor, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**GOODHUE, Senior Judge.**

Antavieon Chyrome Jackson was convicted by a jury of sexual abuse in the third degree on December 16, 2016.  Jackson moved for a new trial, but his motion was denied.  Jackson appeals.  We affirm.

## I.  Facts

The complaining witness, E.U., got off work on February 9, 2015, at 2:00 a.m.  She met with Jackson at her home later that morning for the purpose of transacting a food-stamp sale.   Jackson's girlfriend, Ashley Shea, was also involved in the transaction.  Shay was apparently outside of E.U.'s home or in the vicinity in her car when the transaction was to take place.  E.U. and Jackson were seated on the couch in E.U.'s home and negotiating the sale when Jackson touched E.U.'s upper leg.  Jackson then grabbed E.U.'s sweatpants and started removing them, and a struggle ensued.  Jackson pushed her down on the couch or loveseat.  E.U. resisted and repeatedly said, "No."  E.U. testified that Jackson licked her behind her ear and inserted his penis partway in her vagina.  He did not ejaculate at that point, but in trying to insert his penis he "hit her bottom portion a lot of times."  She was able to get away from him, run into the bathroom, and lock the door.  E.U. washed her groin with a washcloth and deposited it in her hamper.

The father of E.U.'s two children is Dontavieous , the brother of Antavieon.  E.U. and Dontavieous had broken off their relationship prior to this incident, but Jackson and E.U. knew each other well because she paid Jackson to do odd jobs for her when Dontavieous was not available.

After the incident, E.U. called a friend, who contacted Dontavieous.  He and E.U. met and went to Jackson's mother's residence, where they assumed Jackson

would be. They were met in the yard by Jackson. Dontavieous made an accusation, asserting in essence that Jackson had stolen sexual relations. Jackson responded by saying, "She's lying, bro," and took off running. Dontavieous took after Jackson, and eventually, he and E.U. resorted to pursuing Jackson in their car. Jackson called the police to report that he was being pursued by an unknown assailant. Police intercepted Dontavieous and E.U., and E.U. reported the assault. The police directed her to a hospital.

A sexual assault nurse examined E.U., found she had suffered recent abrasions on her back and hands, and observed that she was upset. E.U. told the nurse what had happened, and a swab of her ear was taken. Two washcloths were later taken from E.U.'s bathroom hamper. E.U. could not remember which one of the washcloths she had used to clean herself. One of the washcloths examined contained sperm that matched the DNA profile of Jackson. Tests reflected the ear swab also contained DNA belonging to Jackson.

Jackson testified, in essence, that he had no sexual contact with E.U. on the day of the alleged incidence. He does not deny he was at E.U.'s residence but asserts he had intercourse with his girlfriend twice previous to going to E.U.'s home and that he had cleaned off his penis by using the washcloth in E.U.'s bathroom. On cross-examination, Jackson denied he ever knew a Miranda Jackson (Miranda), but on rebuttal, Miranda testified that she had a relationship with Jackson after his arrest for sexually abusing E.U. She also testified that Jackson, presumably knowing or fearing his DNA would be found in E.U.'s bathroom, told her he had blown his nose on a napkin or facial tissue he had left in E.U.'s bathroom. He told her nothing about a washcloth or washing his penis in the

bathroom. At the close of all the evidence, Jackson made a motion for a new trial, but it was denied. It is the denial of that motion that is the basis for this appeal.

## II. Preservation of Error

Jackson moved for a new trial contending the weight of the evidence did not support the verdict. The motion was denied. The State does not contest error preservation.

## III. Standard of Review

A motion for a new trial should be granted only when a greater amount of credible evidence suggests the verdict was a miscarriage of justice. *State v. Ellis*, 578 N.W.2d 655, 658-59 (Iowa 1998). A district court's ruling denying a motion for a new trial is reviewed for an abuse of discretion. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). A motion for new trial should be granted only in exceptional cases. *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). Unless the evidence weighs heavily against the verdict, the court should not lessen the jury's role as the trier of fact. *Id.*

## IV. Discussion

No contention of consensual sex between the parties was raised. E.U. testified that she continually resisted, and her assertions were not challenged or disputed. Jackson's only defense was that a sexual act never happened. Jackson points out inconsistency in minor details in E.U.'s trial testimony with other statements she had made, but E.U.'s testimony, statements to the police, and statements to the sexual assault nurse were remarkably consistent as to the essential events. This is not a simple "she said, he said" dispute, dependent upon whom you believe. E.U. had recent abrasions. When confronted by Dontavieous

before any knowledge of E.U.'s rendition of the events had been communicated, Jackson replied by saying, "She is lying, bro," and then ran. There was never any explanation of Jackson's DNA on E.U.'s ear. Jackson's explanation of his DNA and semen in the washcloth at trial did not seem plausible and was inconsistent with what he had told Miranda at a later time. The presence of Jackson's DNA and semen at the scene was totally consistent with E.U.'s testimony. The independent evidence clearly substantiates the jury's verdict. The greater weight of the evidence supports the verdict, and the motion for a new trial was correctly denied.

**AFFIRMED.**