# IN THE COURT OF APPEALS OF IOWA

No. 20-0876
Filed April 28, 2021

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**CURNET JOSEPH BREWER,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

Curnet Brewer appeals his conviction for possession of a controlled substance with intent to deliver, as a second or subsequent offender. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., Tabor, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**VAITHESWARAN, Presiding Judge.**

A jury found Curnet Brewer guilty of possession of a controlled substance (cocaine base "crack"). *See* Iowa Code § 124.401(1)(c)(3) (2019). Brewer stipulated to being a second offender. *See id.* § 124.411. The district court denied his motion for new trial and imposed sentence. On appeal, Brewer argues the court should have granted him a new trial.

## I.   *Background Facts*

A confidential informant testified that Brewer was in her home with drugs in his possession. The informant contacted an officer with the Dubuque Drug Task Force and told him Brewer "was bagging up a couple big chunks of the crack and [the informant] was actually sitting there observing him doing it." The informant "watched [Brewer] break it up, put it on the scale and weigh it, and then tie off the [small plastic bags] and put them all in one bag." The informant "discrete[ly]" used her iPhone to take photos and a video of Brewer. She described the two pictures that were admitted as "a picture of [Brewer] with an actual [small plastic bag] in his hand where he [was] placing the crack cocaine in the [small plastic bag]" and a picture of "a digital scale for weighing the crack cocaine." The informant transmitted the photos and video to the officer and gave the officer "information when [she] knew that [Brewer] was about to leave the house." She testified Brewer "made a few phone calls for a ride," and about "20 minutes" later, he left the house with the drugs and went "to the store to get [her] a pack of cigarettes." Brewer returned with the cigarettes and left again. The informant called the officer to inform him of "the make and model and color of the car" Brewer was in.

An officer was dispatched to conduct a traffic stop on the vehicle in which Brewer was a passenger, based on certain known violations. A drug dog alit on the car. As the stopping officer patted Brewer down, Brewer "took off running." The officer watched as he "ran into a fenced-in yard." Knowing the fence was "too high for [Brewer] to jump over" and seeing Brewer was retreating towards the entrance, the officer ran towards him and ordered him "to get on the ground." Officers found a "large amount of cash on his person"—$420, comprised of nearly all $20 bills. The supervising officer opined that in his lengthy experience investigating "the drug trade," "the most common denomination" he saw was "the $20 bill."

Meanwhile, the officer who earlier communicated with the confidential informant searched the area "for anything that may have been thrown during the foot pursuit." "[D]irectly on the other side of the fence where . . . Brewer had stopped [running]," and "sitting right on the snow," the officer "located a plastic bag, like a plastic sandwich bag, that had multiple individually wrapped packages of crack cocaine inside of it. 12 in total." The net weight of the drugs was just under an ounce. Based on his professional experience, the officer explained that "an ounce of crack cocaine is an extremely large amount," it is "very rare to see that much," and he had "seen an ounce of crack cocaine maybe four or five times." He opined, "Based on the amount, based on the way it [was] packaged [and evenly weighed], . . . it [was] definitely indicative of somebody possessing with the intent to deliver it." The supervising officer similarly answered "No" when asked if he "ever encountered someone who was strictly just using crack cocaine who had nearly an ounce in their possession."

## II.    *Standard of Review*

Brewer's new trial motion asserted the verdict was contrary to the law or evidence.  *See* Iowa R. Crim. P. 2.24(2)(b)(6).  In its resistance, the State conceded the standard to be applied by the district court under this ground was whether the verdict was "contrary to the weight of the evidence," a standard that differed from the "sufficiency of the evidence standard."

On appeal from the denial of a new trial motion premised on Iowa Rule of Criminal Procedure 2.24(2)(b)(6), we do not review the underlying question of whether the verdict is against the weight of the evidence.  *See State v. Reeves*, 670 N.W.2d199, 202 (Iowa 2003).  Our review is simply for an abuse of discretion. *See State v. Wickes*, 910 N.W.2d 554, 563–64 (Iowa 2018) ("We generally review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion." (quoting *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016)).[1]

---

[1]The *Wickes* court stated, "we review rulings on a motion for a new trial for errors at law when there is a claim that the district court failed to apply the proper standard in ruling on that motion."  910 N.W.2d at 564.  After noting that "the district court's use of the term 'substantial evidence' . . . create[d] some ambiguity surrounding the standard of review it applied," the court concluded the correct weight-of-the-evidence standard rather than the incorrect substantial evidence standard was applied.  *Id.* at 570–71.  The court reasoned that the district court "did not expressly refer back to a previous ruling," "assessed the credibility of the witnesses" during the bench trial and did not "improperly view the evidence in the light most favorable to the verdict."  *Id.*  Here, the district court characterized "the essence of the [new trial] motion" as "basically insubstantial evidence to support the jury's verdict" and found "that there was substantial evidence to support the essential elements of the offense" as "argued at the time of trial in the form of a motion for directed verdict . . . both at the close of the State's case and at the close of all evidence."  The district court also stated this was "essentially the same argument and essentially the same [r]uling."  The court's language is indicative of substantial-evidence review.  But the court also made reference to "having received and reviewed the exhibits, having listened to the testimony of the witnesses and having had an

### III.    *Analysis*

Brewer argues "the weight of the evidence presented by the [S]tate does not prove beyond a reasonable doubt that [he] is guilty."  In his view, "there was no indication . . . when" the "photographs and video evidence were recorded"; "[n]o one saw [him] throw anything over the fence immediately before his arrest"; and the State failed to prove he "had the specific intent to deliver the controlled substance."

The district court could have discounted Brewer's challenge to the photographs and video evidence based on the confidential informant's detailed testimony concerning when and where she captured the evidence.  As for the drugs, the district court could have credited the officer's statement that the small plastic bag of drugs was found across the fence from the yard in which Brewer was apprehended and could have been swayed by a picture of the bag lying untrammeled on top of the snow.  Finally, on the question of whether Brewer had the specific intent to deliver the drugs, the court could have given credence to the confidential informant's testimony about Brewer's weighing and packaging of them and the officers' testimony concerning the manner of packaging, the total weight of the drugs, and the significance of the large number of $20 bills.  We conclude the district court did not abuse its discretion in denying Brewer's new-trial motion.

**AFFIRMED.**

---

opportunity to observe the witnesses."  This language may be indicative of weight-of-the-evidence review.  Because Brewer does not assert the district court applied the incorrect standard, we will assume the weight-of-the-evidence standard was applied, requiring review for an abuse of discretion.