# IN THE COURT OF APPEALS OF IOWA

No. 16-1921
Filed August 15, 2018

**CARLSTON FREDERICK DONALD,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Linn County, Kevin McKeever, Judge.

Carlston Donald appeals the district court's denial of his postconviction-relief application. **AFFIRMED.**

John G. Daufeldt of Daufeldt Law Firm, PLC, Conroy, for appellant.

Thomas J. Miller, Attorney General, and Darrel L. Mullins, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Carlston Donald appeals the district court's denial of his application for postconviction relief (PCR). He contends the court erred in concluding his appellate counsel was not ineffective in the direct appeal following his criminal conviction. Donald specifically argues his appellate counsel was ineffective in failing to (1) challenge the weight of the evidence underlying the conviction and (2) file a proof brief or follow the protocol for frivolous appeals contained in Iowa Rule of Appellate Procedure 6.1005 (2009).

## I.    Background Facts and Proceedings

Sometime after 9:00 p.m. on the evening of December 23, 2008, Harold and Frances Kavalier observed a light blue van engaging in odd behavior in a restaurant parking lot in Cedar Rapids. An African American male wearing a hooded sweatshirt with the "hood tied up way around [his] face" eventually emerged from the van, which contained at least two other occupants, and proceeded in the direction of a nearby hotel. Seth Knight was working the front desk at the nearby hotel at approximately 10:00 p.m. when an African American male "with a hooded sweatshirt on really tight around the face" approached him at the front desk, displayed a knife, and directed Knight "to give him all the money." Knight complied, the robber fled, and Knight called the police.

Donald was ultimately charged by trial information with first-degree robbery in connection with the foregoing events. In July 2009, a jury found him guilty as charged. Donald filed a motion for a new trial, complaining, among other things, the verdict was contrary to the weight of the evidence. The district court denied the motion, and Donald appealed following the imposition of sentence. On direct

appeal, the parties filed a joint motion to reverse pursuant to Iowa Rule of Appellate Procedure 6.1006(3) on the ground that the district court improperly ordered Donald to pay restitution for court-appointed attorney fees in excess of the regulatory limit in place at that time. The supreme court sustained the motion and remanded the matter to the district court for vacation of the improper sentencing provision. The judgment and sentence were otherwise affirmed. Procedendo issued in April 2010.

In August 2011, Donald filed a pro-se PCR application. Following a number of continuances, Donald's court-appointed counsel filed an amended PCR application in March 2016 alleging: (1) perjury of the State's witnesses at trial; (2) prosecutorial, judicial, and juror misconduct at trial; and (3) ineffective assistance of appellate counsel for "failure to appeal any of the above issues." Generally, Donald argued his appellate counsel was ineffective in failing to raise on direct appeal the issues asserted in his motion for a new trial following his conviction, one of which was a weight-of-the-evidence claim.

Following a hearing, the district court denied Donald's application, concluding none of "the claims he sought to raise on appeal had any merit." As noted, Donald appeals.

## II. Standard of Review

Appellate review of PCR proceedings is typically for correction of errors at law, but where a claim of ineffective assistance of counsel is forwarded, our review is de novo. *See Diaz v. State*, 896 N.W.2d 723, 727 (Iowa 2017). Donald must prove by a preponderance of the evidence that (1) his appellate counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*,

466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018).  We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief."  *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)).  A failure to register meritless arguments does not amount to ineffective assistance of counsel.  *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015).

## III.    Analysis

Donald contends the district court order denying his motion for a new trial on weight-of-the-evidence grounds "was ripe for appellate review," his appellate counsel was ineffective in failing to raise the issue on direct appeal, and the district court in this PCR action erred in declining to conclude the same.  Donald additionally argues appellate counsel rendered ineffective assistance to the level of structural error in failing to file a proof brief or follow the protocol for frivolous appeals contained in the version of Iowa Rule of Appellate Procedure 6.1005 that was in effect at the time of his direct appeal.

### A.    Weight of the Evidence

As to the prejudice prong of an ineffective-assistance claim, a defendant is required to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Had appellate counsel raised the weight-of-the-evidence challenge on direct appeal, the question on appeal would have been whether the district court abused its discretion in determining whether more credible evidence "support[ed] the verdict rendered than support[ed] the

alternative verdict." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). This assessment "is broader than the sufficiency-of-the-evidence standard in that it permits the court to consider the credibility of witnesses." *Id.* At the same time, however, "it is also more stringent than the sufficiency-of-the-evidence standard in that it allows the court to grant a motion for a new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered." *Id.* The grant of a new trial on weight-of-the-evidence grounds is appropriate "only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.* In its ruling on the new-trial motion, the district court implicitly concluded the evidence did not preponderate heavily against the jury's verdict.

In his motion for a new trial and supporting brief, Donald generally contended more credible evidence supported a finding that he was not the person who perpetrated the crime. He maintains this position in this appeal. Donald first argues the testimony of the hotel clerk, Seth Knight, supported a finding that another person, Eric Townsel, was the perpetrator of the crime, contending Knight's description of which hand the perpetrator wielded the knife with, as well as the perpetrator's size, skin tone, and features pointed to Townsel as the robber. However, Knight unequivocally testified that he did not get a good look at the perpetrator, he was unable to identify anyone in a subsequent photo array, and he is "not a very good judge of weight."

Next, Donald argues the testimony of Frances and Harold Kavalier indicated Donald was not even present at the scene of the crime. Specifically, he argues the Kavaliers' testimony shows only three persons—Townsel, Betty Perez, and Gwendolyn Travis—were in the van from which the robber emerged before the

commission of the crime. Frances did testify that there were at least three individuals in the subject van, but she additionally testified she was unable to see into the back of the van. Harold's testimony also indicated there were at least three persons in the van, but his testimony was not definitive on whether he was able to see into the rear of the van either.

Third, Donald argues the testimony of Townsel, Perez, and Travis—all of whom identified Donald as the perpetrator of the crime—was inconsistent and contrary to other evidence and the witness's prior statements. We agree that some of the testimony provided by these witnesses was inconsistent, but these inconsistencies only concerned facts that were generally immaterial to the actual commission of the crime. The witnesses were inconsistent in describing the sequence of events occurring before and after the robbery, but all three provided similar accounts of the material facts of the robbery itself, generally testifying to the following chronological sequence of events: (1) Donald directed Townsel to drive to the hotel that was ultimately robbed, (2) Donald got out the van and returned to the van in a hurried fashion a number of minutes later, (3) Donald directed Townsel to drive, and (4) Donald changed his clothes and discarded the clothes he was wearing during the robbery in a garbage can in an alley. Additionally, Knight testified approximately $300 was stolen from the hotel. Perez testified Donald obtained approximately $300 in the robbery and gave $40 or $50 to Townsel. Townsel testified Donald gave him $50 after the robbery for driving. The testimony provided by these witnesses was generally consistent as to the material facts concerning the commission of the crime. Donald also complained Townsel's testimony was irreconcilable with his deposition testimony and is therefore not

credible. But Townsel readily admitted in his trial testimony that he lied in his deposition; he explained he was incarcerated, his wife was still on the streets, and he was afraid Donald might get released and do something to his wife.

Finally, Donald asserted in his motion for a new trial and supporting brief that his testimony and the testimony of his alibi witnesses was consistent and more credible than the testimony of Perez, Townsel, and Travis. Elaine Carter, Donald's sister, merely testified she never saw Donald wear a sweatshirt or shoes matching those worn by the perpetrator in the robbery. Cerenna Griffin, a cashier at a cigarette outlet, testified Donald frequented her store in the month the crime occurred, December 2008. She did not testify he visited her store on the night the robbery occurred, nor did she provide a specific time that Donald would typically visit the store. Everett Asby is an employee of the Mission of Hope, an entity that provides free clothing to those in need. He testified to his recognition of the sweatshirt worn by the robber during the commission of the crime as one that was donated to the Mission of Hope. He further testified that he had no record of Donald receiving such a sweatshirt, but the record keeping on handing out clothing was "hit-and-miss" depending on who was working. One of Donald's drinking friends, Anthony Lynn, testified Donald was with him at William Carroll's residence on the night in question from 9:00 p.m. until about 1:30 a.m. the next morning. However, Lynn also testified he was "drinking so much" on the evening in question and he did recall that Donald left the house at some point and came back later. Carroll, another of Donald's friends, testified he was with Donald beginning around 7:30 p.m. and then for three to five hours thereafter. Like Lynn, Carroll was "drinking beer, as usual" on the night in question. The purported alibi testimony

provided by Lynn and Carroll is inconsistent with what Donald initially provided police, that he was at Vicki Day's residence visiting his dog the night the robbery occurred. When initially interviewed by police, Donald never mentioned being with either Lynn or Carroll on the night of the robbery.

Donald conceded in his testimony that he was with Townsel, Travis, and Perez on the night in question, but he testified they dropped him off at home at approximately 9:00 p.m., which was immediately before the robbery occurred. This was clearly inconsistent with Carroll's testimony that he was with Donald on the night in question beginning at 7:30 p.m. According to Donald, after he was dropped off, he went to Day's home for ten to fifteen minutes to purchase drugs, then proceeded to Carroll's residence, where he remained for "most of the night." As to the sweatshirt the robber was identified to have worn in the robbery, Donald testified, "I would never wear nothing like that ever." It was within the province of the jury to resolve conflicting evidence.

Upon our de novo review of the record, we cannot say more credible evidence supports an alternative verdict than supports the verdict rendered, or that the evidence preponderates heavily against the jury's verdict. We therefore conclude Donald was not prejudiced by appellate counsel's failure to renew the weight-of-the-evidence claim on direct appeal.

### B. Protocol for Frivolous Appeals

Donald alternatively argues appellate counsel rendered ineffective assistance to the level of structural error in failing to file a proof brief or follow the protocol for frivolous appeals contained in Iowa Rule of Appellate Procedure 6.1005. The State does not contest preservation of error on this argument, but we

do. *See, e.g.*, *State v. Bergmann*, 633 N.W.2d 328, 332 (Iowa 2001) ("Although the State concedes that error has been preserved . . . , we disagree."); *Top of Iowa Co-op v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, this court will consider on appeal whether error was preserved despite the opposing party's omission in not raising the issue at trial or on appeal."). Donald's argument was neither raised in, nor decided by, the PCR court, and Donald does not assert PCR counsel rendered ineffective assistance in failing to raise the issue. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *State v. Mulvany*, 600 N.W.2d 291, 293 (Iowa 1999) ("[W]e require error preservation even on constitutional issues."); *see also State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010) ("Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules."). We decline to consider the argument for the first time on appeal.

## IV.    Conclusion

We affirm the district court's denial of Donald's PCR application.

**AFFIRMED.**