# IN THE COURT OF APPEALS OF IOWA

No. 18-0829
Filed May 1, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOSEPH RONALD BANKS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Buchanan County, David P. Odekirk, Judge.

Joseph Banks appeals his conviction for lascivious acts with a child. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, (until withdrawal) and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

After a bench trial, Joseph Banks was found guilty of lascivious acts with a child, in violation of Iowa Code sections 709.8(1)(a), 709.8(2)(a), and 903B.1 (2016). He contends the trial court abused its discretion in denying his motion for new trial, asserting the verdict is contrary to the weight of the evidence.

We review the trial court's ruling on a motion for new trial on the ground the verdict is contrary to the weight of the evidence for an abuse of discretion. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). "[A] district court may invoke its power to grant a new trial on the ground the verdict was contrary to the weight of the evidence only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.* This is not an extraordinary case.

On November 4, 2016, nine-year-old B.N. was picked up after school by Banks because she was going to go to his house overnight and earn money by cleaning.[1] Banks's wife was not home when they arrived. According to B.N.'s testimony, on the drive over, "[Banks] said, what we do stays between [B.N.] and [Banks] and [B.N.] and [Banks] only." After some time at Banks's home, "He asked [B.N.] for something to cover [B.N.'s] eyes." When B.N. said she did not have anything, Banks grabbed some piece of black clothing from a room and tied it around B.N.'s eyes. B.N. wanted to go to the bathroom and attempted to take the blindfold off. Banks "said no." Instead, he helped her walk to the bathroom, pulled her pants down, and sat her on the toilet. Banks told B.N., "don't forget to

---

[1] Banks is married to B.N.'s step-father's sister. B.N. was trying to earn money to pay for something. Before the incident at issue here, B.N. had helped Banks's wife clean out her car.

wipe" but then he wiped her, his hand making contact with her vagina. He then pulled up her pants.

B.N. told Banks she wanted to go to bed. Banks walked her out of the bathroom and to his daughter's bedroom. He took off the blindfold, and B.N. brushed her teeth. When she return to the bedroom, Banks changed her into her pajamas. She was going to put on her pajama pants but he told her she "couldn't wear the bottom. He said it gets too hot." Banks left the room but later returned, told B.N. to wake up, and began spreading B.N.'s legs apart. B.N. "could feel his hand on [her] vagina when he was spreading [her] legs apart." She told him she was too tired, and Banks said, "We'll try again tomorrow." In the morning, B.N. got dressed and told Banks she felt sick and asked to go home. At trial, she said she was not really sick but "was too scared to stay again." When asked why she was scared, B.N. testified, "Because when he said that we'll try again on—when he said we'll try again tomorrow, I didn't know what he meant, so I was scared so I said I wanted—I said I was—I felt sick." She acknowledged she thought he meant he was going to touch her again. B.N. did not ask for Banks's help in going to the bathroom or dressing. She did not need assistance in the bathroom. Nor did she need assistance to dress or undress.

B.N. testified that in the past,[2] Banks had "licked my vagina" when they were playing house. B.N. stated Banks pretended to be her husband and explained "husbands kiss their wives before bedtime and then . . . he picked a particular spot to kiss me, like lick me."

---

[2] B.N. stated the prior incident was when she was in first or second grade.

B.N.'s mother testified that when B.N. was about seven years old, B.N. told her mother "she was touched by her Uncle Joe" but when her mother attempted to follow up, B.N. "completely shut down." B.N.'s mother telephoned police after B.N. talked with her about the earlier incident; she was told that they would need more details before they could investigate. Her mother continued to allow Banks to babysit B.N. after B.N.'s report, testifying "[B.N.] wouldn't tell me any details, so I never knew—really knew what to think of it or anything. I've always, you know, wondered, but I thought of that it was family, that I could trust him."

The court found Banks guilty, making specific credibility findings:

> The court notes it found B.N.'s testimony credible given her demeanor throughout both direct and cross-examination. The court also found her interview with [the child protection center] to be credible. Although there may have been some discrepancies in the way she told her story, the court found her testimony and interview, viewed as a whole, to be believable and consistent. The court does not find that she was impeached by cross-examination or other evidence.
>
> The court did not find [Banks's] version of events given during his interview to be credible. The court finds that [Banks] was already aware of the accusations prior to his interview and had a chance to prepare his statement. Further, the court does not find [Banks's] assertions concerning the timeline credible. The court finds that [Banks] had adequate time during the evening of November 4, 2016, to commit the acts testified to by B.N. and still play video games with friends, text his wife, and speak with his wife by phone.

Banks filed a motion for a new trial, in part asserting newly discovered evidence. A hearing was held at which the defense called fifteen-year-old M.C., who stated B.N. told him she made up the allegations about Banks. In denying the motion for new trial, the district court found M.C.'s statement not credible and that the testimony did not "cast credible doubt on the testimony offered by B.N. at

trial." The court also found the evidence "does not preponderate heavily against the verdict and in fact the court finds the weight of the evidence supports the verdict."

On appeal, Banks argues the court should have granted a new trial because B.N.'s testimony was not credible. The weight-of-the-evidence standard requires the district court to independently "weigh the evidence and consider the credibility of witnesses." *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998). On appellate review, we do not reweigh the evidence or judge the credibility of the witnesses in our consideration of the denial of a motion for new trial—our review is limited to the exercise of discretion by the trial court. *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). To prevail, the moving party "must show that the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* at 202.

Here, the trial court's explanation of its decision indicates it applied the correct legal standard and made credibility assessments. The court weighed the evidence and determined more credible evidence rested on the side of conviction. Banks has not shown the court exercised its discretion on grounds or for reasons that are clearly untenable or to an extent clearly unreasonable. Finding no abuse of the trial court's discretion here, we affirm.

**AFFIRMED.**