# IN THE COURT OF APPEALS OF IOWA

No. 18-0989
Filed July 24, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CARLOS AUGUSTO RAMIREZ LOPEZ,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Muscatine County, Henry W.

Latham II, Judge.

The defendant appeals his conviction for second-degree sexual abuse.

**AFFIRMED.**

Trey Sucher of Trey Sucher Law PLC, West Liberty, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.

Considered by Vaitheswaran, P.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

Defendant Carlos Augusto Ramirez Lopez (Lopez) appeals from his conviction following jury trial for sexual abuse in the second degree, contending the district court abused its discretion in denying his motion for new trial. On our review, we find the district court did not abuse its discretion, and we affirm.

**I. Background Facts and Proceedings**

In March 2007, Lopez became acquainted with his coworker, Maria, in Postville, Iowa. Maria had two daughters from a prior relationship: N.N., born in 2001, and C.N., born in 2006. That same year Maria had separated from her former boyfriend, the father of N.N. and C.N. Over time, Lopez and Maria progressed from a coworker friendship to a romantic relationship. In 2008, Lopez traveled to Guatemala and, while he was there, Maria informed him she was pregnant with his child. In December, Maria gave birth to their daughter, A.R.

Lopez eventually returned to the United States in 2010 and lived with Maria and her three children, including N.N. On September 22, 2011, Maria found a pair of N.N.'s shorts with white stains on them. Maria asked N.N. about the shorts. N.N. began crying and told her that while Maria was at work, Lopez had touched her breasts and vagina and he "rubbed his front part against her on her back, which hurt her." Maria then told her pastor what N.N. had told her, and the pastor called the police. When the police came to the family's home, N.N. informed them Lopez had "put his thing in her thing" and showed them a pair of black shorts that belonged to her, which later DNA testing confirmed had Lopez's sperm on them. Maria took N.N. to the doctor and had her examined. The doctor concluded the

test results were normal—there were no lacerations, bruises, or tears—but this could be consistent with N.N. having been fondled.

Based on N.N.'s report, law enforcement officers obtained a Miranda waiver and interrogated Lopez through an interpreter. During the interrogation, Lopez denied committing any sex act on N.N. After the interrogation, the police released Lopez.

On October 5, N.N. was interviewed by a child forensic psychologist, which was video recorded. N.N. reported that while she was sleeping in her bed, Lopez came up to her and touched her private area with his hand and she told him to stop. Also in the interview, N.N. stated, "[Lopez] took his thing out" and put "his thing on her back." He asked her if he should put his "thing" in her sister (referring to C.N.), and he showed her sexually suggestive pictures of women on his phone. According to N.N., Lopez stopped when white liquid came out of his "thing."

The State filed a complaint against Lopez in February 2015. In September 2017, a trial information was filed charging Lopez with second-degree sexual abuse. Lopez pleaded not guilty. N.N. was deposed before trial, during which she denied any sexual abuse occurred and testified she had made up the allegations.

At trial, N.N. again testified she made up the allegations against Lopez. She explained she was mad at her mom for separating from her dad and hated Lopez for replacing her dad. She said her seventeen-year-old cousins in Mexico told her to say Lopez had sexually abused her. She claimed that at nine years old, she recognized semen on her shorts, concluded it was from Lopez, and used the shorts to make him look worse.

Lopez told the jury his sperm was on the shorts because he used them to clean up after sex with Maria. Maria testified and confirmed this as the source of Lopez's sperm on N.N.'s shorts. However, evidence showed when police asked Lopez if there was a reason his sperm would be on N.N.'s shorts, he had not mentioned this cleaning-up-after-sex explanation. Instead, he said there would be no reason his DNA would be on N.N.'s shorts. Maria also failed to mention this explanation to police.

Maria testified N.N. told her Lopez had touched her vagina and breasts. When a doctor examined N.N. about the abuse two days after N.N. reported it, Maria told the doctor she found the semen-stained shorts and asked N.N. about them.

In addition, a child forensic psychologist testified in Lopez's defense as to the evolution of N.N.'s accounts of the events and identified potential issues with how N.N. was questioned by the police, the doctor, and the forensic psychologist. During her testimony, the child forensic psychologist emphasized that N.N.'s account of the events changed four times. In rebuttal testimony, the prosecution was allowed, over defense counsel's objection, to show to the jury the video of N.N.'s interview with the forensic psychologist, in which N.N. stated Lopez had sexually assaulted her.

After hearing the evidence, the jury rejected Lopez's claim that he did not engage in a sex act with N.N. and convicted him of second-degree sexual abuse. Lopez moved for a new trial, arguing the evidence weighed against the verdict. The district court rejected his claim and denied the new trial motion. Lopez filed a timely appeal.

**II. Scope and Standard of Review**

We review a denied motion for a new trial on an abuse-of-discretion standard. *State v. Ary*, 877 N.W.2d 686, 705-06 (Iowa 2016) (citing *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006)). On review, we examine whether the district court exercised its broad discretion to grant or deny a motion for a new trial for reasons or to an extent that is clearly unreasonable or on untenable grounds. *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). Appellate review is limited to reviewing the trial court's exercise of discretion, not review of the underlying question of whether the verdict is against the weight of the evidence. *Id.* (citing *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000)).

**III. Analysis**

On appeal, Lopez asserts the trial court abused its discretion in denying his motion for a new trial because the weight of the evidence preponderates heavily against the verdict. *See Ary*, 877 N.W.2d at 706. Lopez asserts there is significant evidence to support the notion that the verdict rendered a miscarriage of justice. *See id.* Lopez argues because N.N. recanted her story after having changed it four separate times, there was no physical evidence in the medical exam to directly prove the sexual abuse, the State did not produce a confession from Lopez, and Lopez had an explanation regarding his sperm on N.N.'s shorts, the verdict is against the weight of the evidence and he is thus entitled to a new trial. We do not find this line of reasoning to be convincing.

The district court is permitted to grant a new trial when the verdict is contrary to the law or evidence. Iowa R. Crim. P. 2.24(2)(b)(6). "[C]ontrary to law or evidence" has been deemed by our supreme court to mean "contrary to the weight

of the evidence." *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). The district court, when faced with a motion for new trial, must consider whether more "credible evidence" supports the verdict rendered rather than supporting an alternative verdict. *Shanahan*, 712 N.W.2d at 135 (citing *Ellis*, 578 N.W.2d at 658–59). A verdict is deemed contrary to the weight of the evidence, thereby necessitating a new trial, when "a greater amount of credible evidence supports one side of an issue or cause than the other." *Reeves*, 670 N.W.2d at 202 (quoting *Tibbs v. Florida*, 457 U.S. 31, 38 (1982)). A district court should only grant a motion for new trial in light of exceptional circumstances. *Id.* (citing *Ellis*, 578 N.W.2d at 659).

Lopez claims the verdict was contrary to the weight of the evidence in part because N.N. recanted her allegations in her testimony at trial. The State offered testimony from Michael Meier, the responding officer who took the initial complaint from N.N. The State also offered a video recording of N.N.'s forensic interview taken at the Child Protection Center (CPC) where N.N. further detailed her accounts of what occurred. In contrast, Lopez offered N.N.'s deposition, where she recanted the allegations, as well as her testimony at trial where she maintained her recantation.

Recantations are issues of witness credibility; that is, the fact finder must determine whether it believes the prior or the present statement more. *See State v. Young*, No. 16-0154, 2017 WL 935071, *2 (Iowa Ct. App. Mar. 8, 2017). In addition to being a credibility question, recantations in cases of intra-family sexual abuse are viewed with the utmost suspicion because of the immense pressure on the child to keep the family unit intact. *State v. Tharp*, 372 N.W.2d 280, 282 (Iowa Ct. App. 1985). The district court, in denying the motion for new trial, did not

explicitly state it found N.N.'s initial statements to be more credible than her recantation. However, the court said:

> As to the motion for new trial, the court has considered the testimony that was presented during the course of the trial and also the testimony as part of that evidence of the witnesses in the trial. The court cannot find from a review of that evidence that I should set aside the finding of guilt that was entered by the jury. I believe the jury made a fair determination as to the credibility of the evidence presented and the credibility of the witnesses who testified during the course of the trial.
>
> I understand that the witness in this case recanted during her testimony. It was up to the jury to determine the credibility of such statement that was made during the course of the trial.
>
> I will not substitute this court's judgment for the judgment of the jury in this case. I believe that they reached a fair decision based on the evidence presented. And it's fair for those reasons that the motion for new trial is denied.

The jury, and thereby the court, must have found N.N.'s contemporaneous allegations of abuse to have been more credible than her later recantations in deposition and at trial.

Lopez also contends N.N. changed her testimony at least four times and maintains that this suggests the weight of the evidence finds against the present verdict. Officer Meier's testimony set forth the statements N.N. made on the day the police were initially called. N.N's CPC video interview was also shown to the jury, where she recounted the sexual contact in more detail. N.N.'s mother also testified to N.N. having initially alleged inappropriate touching of her breasts and vagina. N.N. at trial and in deposition recanted her testimony. Lopez contends because all of these accounts of the abuse are different, the evidence weighs against a finding of guilt. However, again, the jury and the court must have found N.N.'s contemporaneous accounts more credible than her later recantations, despite the development of her allegations.

Lopez contends he is entitled to a new trial as well, in part, because the State did not produce a confession from Lopez and because there was no physical evidence of the abuse. At trial, a copy of Lopez's signed Miranda waiver and the medical reports from N.N.'s physical exam were admitted. The medical report stated there was no sign of physical sexual abuse but the results could be consistent with N.N. having been fondled. The State is not required to produce a confession from the defendant to support a conviction on second degree sex abuse. *See* Iowa Code § 709.3 (2011). "The law has abandoned any notion that a rape victim's accusation must be corroborated." *State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995). Similarly, there are no requirements as to what degree of medical evidence is required for a conviction. As such, these evidentiary categories do not weigh in favor of a new trial.

Lopez lastly contends there was a reasonable explanation for the DNA evidence found on N.N.'s shorts, and, as such, the weight of the evidence does not support the guilty verdict. The State entered into evidence N.N's black pair of shorts containing Lopez's sperm, confirmed by DNA testing. In her statement to the psychologist at the child protection center, N.N. stated the white stain—Lopez's semen—was on her shorts because Lopez sexually touched her until "white stuff came out." Maria told the doctor during N.N.'s exam she had found the shorts and asked N.N. about the white stain, at which time N.N. cried and told her what had happened. At trial, Maria testified N.N. had found the shorts and had brought them to her attention to get Lopez into trouble. Lopez told police when he was arrested he did not know how his sperm would have been on N.N.'s shorts. At trial, however, Lopez and Maria both testified Lopez routinely used dirty laundry to clean

himself after they had sexual intercourse, he happened to use N.N.'s shorts on one occasion, and no sexual contact between Lopez and N.N. occurred. Lopez did not immediately offer to police his innocent explanation for the DNA evidence; a fact which weighs against his credibility in this case. The jury, and the judge in ruling on the new trial motion, apparently found the explanation unconvincing.

We find the district court did not abuse its discretion in denying Lopez's motion for a new trial, as the court could reasonably find the weight of the evidence supports the guilty verdict. The testimony and evidence in this case are not so lacking and without credibility that they are contrary to the guilty verdict.

**AFFIRMED.**