# IN THE COURT OF APPEALS OF IOWA

No. 20-0180
Filed April 14, 2021

**STATE OF IOWA,**
          Plaintiff-Appellee,

**vs.**

**LARONTEZ JAVON BUCHANAN,**
          Defendant-Appellant.
_____

          Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell,

Judge.


          Larontez Buchanan appeals his convictions for murder in the first degree

and robbery in the first degree.  **AFFIRMED.**


          Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for

appellant.

          Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.


          Considered by Mullins, P.J., Greer, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAHAN, Senior Judge.**

Larontez Buchanan appeals his convictions following a jury trial for murder in the first degree and robbery in the first degree, challenging the district court's denial of his motion for new trial on the grounds that the jury's verdicts were contrary to the weight of the evidence and the jury panel was not representative of the racial composition of the community. We affirm.

## I. *Background Facts and Proceedings*

On March 8, 2019, Larontez Buchanan spent much of the day at a home in Des Moines where relatives and friends, including Darryn Brooks, gathered following the death of Buchanan's half-brother, whose funeral was the following day.[1] After midnight, Brooks agreed to give Buchanan a ride home. But Brooks did not complete the task. Instead, he was shot from inside his vehicle with a .380 caliber pistol. Brooks exited the vehicle and was shot from behind four or five more times with a .40 caliber pistol. The shooting reportedly took place at 12:40 a.m.[2] Police responded to a report of a body in a parking lot and discovered Brooks dead from the gunshot wounds.

Buchanan spent the remainder of the night at his girlfriend's nearby apartment. The apartment's surveillance video depicted Buchanan wearing Brooks' lavender dress shirt, with the tags still attached, and distinctive blue jeans

---

[1] Brooks was known to carry large amounts of cash. That day, Brooks footed half the bill for "nine to ten people" to get haircuts for the funeral, including Buchanan. Brooks also paid for liquor for the group that evening. The group decided to wear lavender to the funeral because it was the deceased's favorite color, and Brooks purchased his lavender shirt that day in preparation for the funeral.
[2] A witness awoke to gunshots outside his townhouse at 12:40 a.m.

as he walked into the apartment building at approximately 12:50 a.m. The video also showed Brooks' vehicle being parking outside the apartment building minutes before Buchanan appeared on foot. Police searched the vehicle and found Buchanan's t-shirt and windbreaker. The windbreaker contained gunshot residue on both arms and wrists. Police also found a fired .380 bullet with Brooks' blood on it. The jeans that Buchanan was wearing that night, which were found the next day during a search of his girlfriend's apartment, also contained gunshot residue as well as Brooks' blood.

Buchanan was taken into custody on the evening of March 9. He had $2096 cash in his pocket. Police interviewed Buchanan and noticed "a lot of inconsistencies" with his story. Initially, Buchanan stated that Brooks had dropped him off before the shooting. Later, Buchanan admitted he was in the vehicle when the shooting took place. He maintained he did not shoot Brooks, but he got "scared" and took Brooks' car after the shooting. He admitted taking $300 from Brooks.

The State charged Buchanan with murder in the first degree and robbery in the first degree. *See* Iowa Code §§ 707.2, 711.2 (2019). The case proceeded to a jury trial. Buchanan did not testify. The defense focused on the State's "inconsistent evidence" and the police's failed attempts to follow up on leads

regarding Larry Perry[3] and Christopher Adams.[4]  The defense argued Brooks had stopped to sell marijuana on the drive but accidentally shot himself in the hand when the deal turned bad.  The defense stated Brooks then exited the vehicle, "misfire[d]," and took off "running," and then got shot again by the unknown individual; Buchanan "freak[ed] out" and drove Brooks' vehicle from the scene "to get the heck out of there."

The jury found Buchanan guilty on both counts, and the district court entered judgment and sentence.  The district court denied Buchanan's motion for new trial.  Buchanan appeals.  Additional facts specific to his claims on appeal will be set forth below.

## II.    Standards of Review

"The district court has broad discretion in ruling on a motion for new trial." *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).  We review rulings on motions for new trial asserting a verdict is contrary to the weight of the evidence for an abuse of discretion.  *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016).

---

[3] In June 2019, the .40 caliber pistol, "some drug evidence[,] and some additional firearms as well" were recovered in an unrelated case pursuant to a search warrant on a property owned by Larry Perry.  Police found no relationship between Perry and the Brooks investigation, but noted it was common for firearms to pass hands between individuals with no prior connection.

[4] In August 2019, police were contacted by a person who "wanted to remain confidential" reporting that someone by the name of Christopher Adams "had allegedly put a hit out on [Brooks]."  Police attempted to locate Adams but were unable to do so despite the fact that Adams was taken into custody on charges of robbery in the second degree in an unrelated case.  Police did not obtain any additional information linking Adams to the Brooks investigation.

"We review constitutional questions de novo. This includes claims of systematic exclusion of a distinctive group from the jury pool . . . ." *State v. Veal*, 930 N.W.2d 319, 327 (Iowa 2019) (citations omitted).

## III.    *Weight-of-the-Evidence Claim*

Buchanan contends the district court abused its discretion in denying his motion for new trial on both counts, murder in the first degree and robbery in the first degree. For both offenses, he primarily focuses on the identity element, arguing the jury's verdict was contrary to the weight of the evidence and "[a]t best, the evidence only creates speculation as to [Buchanan's] involvement in the crime, which is not nearly sufficient."

In its ruling denying Buchanan's motion for new trial, the court stated in part:

> [The defense] is correct. This is a circumstantial case. There wasn't an eyewitness. There wasn't film. You know what, in murder cases, lots of times there aren't eyewitnesses because the victim is dead, and maybe there's no one else around. So that's not unusual to have a murder case be a circumstantial evidence case.
>
> Defense made some points during trial. . . . The State still presented a strong case. The defendant was the last person seen with the victim while that victim was alive, and then the defendant had control of the victim's car. The defendant had blood stain[s] of the victim on his jeans. He had gunshot residue on his clothing. By all accounts, based upon the evidence that's presented at the trial, the defendant had the victim's cash and there was other evidence supporting that conviction.
>
> And the defendant was examined by—not at trial, but he was questioned by police and he told two different stories. So we got a glimpse of his credibility which the jury could see and weigh. The jury could weigh the credibility of all the other witnesses and based upon all the evidence as presented, there was strong credible evidence that supports the verdict that the jury made. The jury could have gone the other way, but that's not the standard. It's not a could-have standard. It is whether or not the weight of the evidence supports the jury's verdict, and it does, for reasons I've mentioned, reasons I mentioned at the decision on the motion for judgment of acquittal and other evidence that's in the record.

"On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Reeves*, 670 N.W.2d at 203. Buchanan does not present an exceptional case requiring a new trial. *See Ary*, 877 N.W.2d 686, 706 (Iowa 2016) ("A district court should grant a motion for a new trial only in exceptional circumstances."). Given the evidence presented, we find the district court did not abuse its discretion in denying Buchanan's motion for new trial on these grounds. We affirm on this issue.

## IV.    *Fair-Cross-Section Claim*

In his motion for new trial, for the first time, Buchanan claimed his constitutional rights under the state and federal constitutions were violated "because the jury panel was not representative of the racial composition of the community." The State responded that Buchanan's claim "was not timely raised nor was it preserved and must be deemed waived." Upon receiving the parties' arguments, the district court found Buchanan needed to raise the claim "at the time that it can be corrected by the Court, and that's all to be done with regard to jury composition before that jury is sworn and you start hearing evidence in the case." The court reasoned, "I don't think you get a chance to do the whole trial and then come back and make that claim after you come back and see that there's a guilty verdict." Accordingly, the court concluded the claim "is waived and will not be grounds for a new trial." Buchanan challenges the court's ruling on appeal.

Indeed, "a motion for new trial is too late to raise a constitutional challenge to the jury panel." *State v. Williams*, 929 N.W.2d 621, 629 n.1 (Iowa 2019) (citing *State v. Johnson*, 476 N.W.2d 330, 333–34 (Iowa 1991) (finding a constitutional

objection to the jury panel was waived when first asserted in a postverdict motion for new trial)). As the supreme court has reiterated:

> A post-verdict motion challenging the jury panel simply comes too late to comply with the policies behind the preservation requirement. At the time of defendant's motion, the only corrective action the trial court could have taken would have been to sustain the motion for new trial and conduct a second trial in front of a second jury.

*Id.* (quoting *Johnson*, 476 N.W.2d at 334). Upon our review, we affirm the district court's conclusion that Buchanan's fair-cross-section claim was waived. *See id.* (holding the defendant "waived any article I, section 10 challenge to the jury panel"). We affirm on this issue.

## V. Conclusion

Upon consideration of the issues raised on appeal, we affirm Buchanan's judgment and sentence for murder in the first degree and robbery in the first degree.

**AFFIRMED.**