# IN THE COURT OF APPEALS OF IOWA

No. 21-0327
Filed April 27, 2022

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**DONCORRION SPATES,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Black Hawk County, Thomas A. Bitter, Judge.

 Doncorrion Spates appeals the denial of his motion for new trial. **AFFIRMED.**

 Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

 Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

 Considered by May, P.J., and Schumacher and Badding, JJ.

**MAY, Presiding Judge.**

This is Doncorrion Spates's second direct appeal from his convictions of murder in the first degree, attempted murder, and intimidation with a deadly weapon. We affirm.

Spates's convictions were based upon his participation in a drive-by shooting. In his first appeal, Spates argued he should receive a new trial because (1) the jury venire did not represent a fair cross-section of the community; (2) his conviction was against the weight of the evidence; and (3) racial animus impacted the jury's verdict. *State v. Spates*, No. 19-0749, 2020 WL 6156739, at *1 (Iowa Ct. App. Oct. 21, 2020). Our court rejected Spates's jury-venire and weight-of-the-evidence arguments. *Id.* at *2–3.

As to his racial animus argument, however, we concluded additional proceedings were necessary. *Id.* at *9. We noted that, "in denying Spates's motion for new trial, the district court relied in part on the jurors' *subjective evaluations* of their own motives" for convicting Spates. *Id.* at *8. We concluded, however, that a juror's subjective evaluation of their own or other jurors' motives should not be "part of the analysis." *Id.* Instead, we concluded the decision should be based "on *objective* circumstances, e.g., what was said; how and when it was said; what was said and done before and after; whether and how the statements relate to evidence in the case; whether and how the statements relate to the issues the jury will decide when reaching a verdict." *Id.* at *6. So we remanded for the district court to rule again on Spates's motion for new trial. *Id.* at *8. We gave these specific directions:

The court's determinations on remand should include:

> (1) whether the defendant has proved by "compelling evidence" that a "juror made clear and explicit statements" relating to race;
> (2) if so, the specific content of the statements;
> (3) all relevant context for the statements; and,
> (4) ultimately, whether defendant has proven by "compelling evidence" that a "juror made clear and explicit statements indicating that racial animus was a significant motivating factor in his or her vote to convict." As explained, this is an objective determination based on the content and context of the statements, including the evidence and issues in the trial.
>
> If the district court answers this last question in the affirmative, a new trial should be granted. Otherwise, the conviction and sentence will stand.

*Id.* at *8–9.

Consistent with our instructions, the remand court issued an order that included these detailed findings and conclusions:

> The trial judge . . . testified that after the trial had finished and the verdict was taken on the record, he spoke with the jurors in the jury room. After speaking with them, the jurors began to leave the courthouse. The jury foreperson asked [the trial judge] if [they] could speak with [the trial judge]. They spoke in chambers, and the foreperson said there had been some racial comments by other jurors made during deliberations. According to [the trial judge], the foreperson said one juror one time made the comment "That's what they do." The foreperson told the juror such a comment was not appropriate. The foreperson also told [the trial judge] that two other comments had been made, but the foreperson didn't describe those comments.
>
> The foreperson testified that [they] heard several racial comments by other jurors. The foreperson did not testify that [they] heard anyone say "That's what they do." Rather, the foreperson described hearing a male juror (who was described with some specificity) saying something to the effect of "all African-American young men are gang bangers" and "they're just so desensitized to shooting all the time that they didn't even think to pick it (a bullet casing) up." The foreperson also described hearing a female juror (who was described with some specificity) make a comment that Black people are desensitized to killing and that "they're just raised that way." Those were the only comments the foreperson described

in [their] testimony after being fully examined by counsel for both parties. However, when later recalled to the stand, the foreperson testified to hearing the female juror comment that Black people are raised to be okay with killing people. The foreperson also said a juror had commented that all Black people know each other.

All twelve jurors testified under oath about what statements they heard other jurors make during the course of the trial. Other than the foreperson, three jurors testified that someone had commented "maybe they knew each other." One of those three jurors said the comment was specifically that all Black people know each other. The other two jurors did not believe the comment referred to race, but simply inferred that perhaps the two groups of people involved in the shooting may have known each other, rather than the shooting being entirely random.

One other juror heard a comment that maybe the violence was gang-related. That juror says the foreperson immediately replied that that cannot be assumed.

The male juror who was specifically described on the record[,] and who was alleged to have made certain racial comments[,] was described to every juror. No one heard that male juror make any racial comments. The female juror who was specifically described on the record[,] and was alleged to have made certain racial comments[,] was described to every juror. Again, no one heard that female juror make any racial comments.

Each juror was presented with the specific statements allegedly heard by the foreperson, and each juror was asked, with respect to each purported statement, whether he or she had heard such statement during the course of the trial. Numerous jurors reacted in a physically appalled or alarmed way. They almost seemed to be offended by the statements and offended by even the suggestion that such a statement had been made.

There is compelling evidence that a juror commented that perhaps the people involved in the underlying incident knew each other. It's possible that the statement, or some other statement, was specifically that *Black* people know each other. It seems that the context for the statement was a juror questioning whether the violence was entirely random, or whether the two groups involved in the incident were familiar with each other. Said statement is not a clear and explicit statement which indicates that racial animus was a significant motivating factor in any juror's decision to convict.

There is compelling evidence that a juror commented that perhaps the violent situation was gang-related. It is clear that most of the jurors never heard such a statement. The context of the statement is unclear, but it seems that the statement was made more as a query of whether the incident was gang-related, rather than a suggestion that all Black people are "gang bangers." Other than the foreperson, no juror heard any statement that all Black people are

"gang bangers." One juror heard a comment that perhaps this situation was gang-related. The court is not convinced and does not find that this statement is indicative of racial animus or that it was a significant motivating factor in any juror's decision to convict.

There is not compelling evidence of any other statements having been made that indicate racial animus was a significant motivating factor in a juror's vote to convict.

The defendant's motion for new trial is denied.

Spates now appeals the remand court's refusal to grant a new trial. The parties disagree as to whether the proper standard of review is de novo or abuse of discretion. We tend to think that, under these circumstances, the decision to grant or deny a new trial was properly committed to the district court's discretion. *See, e.g.*, *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015) ("We review a denial of a motion for a new trial based upon juror misconduct or juror bias for an abuse of discretion."); *cf. Peña-Rodriguez v. Colorado*, 137 S. Ct. 855, 869 (2017) (noting that the determination of whether "the no-impeachment bar" should be set aside because a juror's statement "tend[s] to show that racial animus was a significant motivating factor in the juror's vote to convict . . . is a matter committed to the substantial discretion of the trial court in light of all the circumstances, including the content and timing of the alleged statements and the reliability of the proffered evidence"). But "[b]ecause we conclude we would reach the same conclusion applying either standard of review, we need not decide which standard applies." *State v. Ary*, 877 N.W.2d 686, 699 (Iowa 2016).

Spates's brief raises three main arguments. First, Spates generally contests the remand court's finding that there was not compelling evidence of juror statements that show racial animus was a significant motivating factor in a juror's vote to convict. We disagree. Rather, following our review of the record as a

whole, we agree with the district court's conclusions. We expressly find that, although some jurors reported hearing troubling comments that implicated race, the record contains no "'*compelling* evidence' that a 'juror made *clear and explicit statements* indicating that racial animus was a significant motivating factor in his or her *vote to convict.*'" *See Spates*, 2020 WL 6156739, at *9 (emphasis added) (citation omitted). So, under the standard enunciated in our prior opinion, the district court was right to deny Spates's motion for new trial. *Id.* (directing district court to grant a new trial if "defendant has proven by 'compelling evidence' that a 'juror made clear and explicit statements indicating that racial animus was a significant motivating factor in his or her vote to convict'").

Next, Spates criticizes the remand court's reliance on jurors' negative physical reactions when they were asked about whether certain race-related comments had been made during deliberations.[1] According to Spates, "jurors' physical reactions to questions" was "not one of the criteria" the court should have considered on remand. We disagree. When deciding what to believe, a fact finder may consider their visual observations of witnesses, including witnesses' body language. *See In re Marriage of Garmoe*, No. 19-1122, 2020 WL 1888774, at *1

---

[1] Actually, Spates's brief refers to the remand court's reliance on "the trial judge's testimony" about jurors' physical reactions. We think this misunderstands the remand court's findings. In the trial judge's testimony, we find no mention of jurors' physical reactions to questioning about deliberations. So we do not believe the remand court was relying on the trial judge's testimony.

Rather, we note that the same judge who wrote for the remand court also presided over the 2019 evidentiary hearings during which the trial judge and the jurors testified about Spates's claims of racial animus. So the remand judge had the benefit of seeing the jurors testify first-hand during those hearings. We believe that experience is the source of the remand court's findings about the jurors' physical reactions during their testimony.

(Iowa Ct. App. April 15, 2020) ("While we review only a cold record, the [trial] court has the benefit of observing the parties in person."); Iowa Civ. Jury Instructions 100.9 (advising the jury that there are "many factors" they may consider "in deciding what testimony to believe" including a witness's "appearance"). And our prior opinion did not prohibit the remand judge—who presided when the jurors testified—from considering visual observations of the juror-witnesses.

Finally, Spates suggests we should now adopt legal standards that differ from those enunciated in our prior opinion.[2] We disagree. "It is a familiar legal principle that an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case." *United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000). So our prior opinion is "the law of the case." *See id.* Its statements of the law control our approach to this second appeal.[3] *See id.*

In conclusion: In Spates's prior appeal, we conditionally affirmed Spates's conviction and remanded for reconsideration of his racial animus claim using a clarified framework. We now affirm the remand court's finding that Spates failed to prove his racial animus claim, and we affirm Spates's convictions.

**AFFIRMED.**

---

[2] As one example, Spates suggests we should adopt a structural defect approach described in *United States v. Smith*, No. CR 12-183, 2018 WL 1924454, at *14 (D. Minn. Apr. 24, 2018).

[3] We note Spates did not seek further review of our prior opinion.