# IN THE COURT OF APPEALS OF IOWA

No. 22-0012
Filed January 25, 2023

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**EDWARD DEANDRE ASH,**
　　Defendant-Appellant.

_____

　　Appeal from the Iowa District Court for Linn County, Casey D. Jones (Discovery Ruling) and Russell G. Keast (Trial), District Associate Judges.

　　A defendant appeals his conviction of domestic abuse assault causing bodily injury. **AFFIRMED.**

　　Webb L. Wassmer of Wassmer Law Office, PLC, Marion, for appellant.

　　Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

　　Considered by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Edward Ash was convicted of domestic abuse assault causing bodily injury after he head-butted his former girlfriend in the mouth. On appeal from that conviction, Ash claims the district court abused its discretion in denying his pretrial request for a subpoena to obtain the victim's mental-health records, the evidence is insufficient to support his conviction, and the verdict is contrary to the weight of the evidence. We affirm.

**I.     Background Facts and Proceedings**[1]

Ash and M.H. had been in a decade-long relationship when M.H. decided it would be best if they went their separate ways. In November or December 2020, M.H. told Ash her feelings—that she was not "invested in the relationship" anymore and wanted to move forward on her own. But they decided to keep living together until the lease on their apartment expired in May 2021. M.H. started sleeping alone in one of the bedrooms, and Ash slept in the living room.

On March 12, 2021, M.H. was just waking up around 9:00 a.m. because she did not have to go into work that day. While she was still in bed, looking at her cell phone and watching television, Ash came in and said: "I just want to know why you're being like this, why are you acting like this." He started cursing at her and asking why she was "acting like the B word." M.H. got up and told him, "I'm not doing this this morning." She tried to go to a different room, but Ash was standing in her way with his finger in her face, pushing her head back. She started to get upset and words were exchanged when, according to M.H., "out of nowhere he

---

[1] We note that Ash's appellate brief does not include a statement of facts as required by Iowa Rule of Appellate Procedure 6.903(2)(f).

reared back and head-butted me in my face." M.H. fell back and "immediately felt pain in [her] mouth area."

Once she got up, M.H. reached for her cell phone off the bed. But Ash grabbed it instead and would not let her have it. M.H. gathered some of her things and then went to get her car keys to leave, but they were gone. She found Ash walking from the kitchen to the living room and saw her phone in his hand. She reached for it and asked for her keys, but Ash refused and kept "snatching [the phone] out of her reach as [she] was trying to get it." When M.H. made a last grab at her phone, Ash pushed her to the ground, and they started "tussling," with M.H. explaining: "He was holding me down as I was trying to reach up to grab my phone." M.H. got free after screaming for help. She left the home and sought assistance from neighbors, who called the police.

Officer Josh Marroquin of the Cedar Rapids Police Department was the first officer on the scene. When he arrived, he saw Ash standing in the street a couple of houses down from where they were called. Ash approached the officer, who asked him what had happened. Ash explained he got into an argument with M.H., "she ended up getting into his face, yelling at him and he ended up head-butting her in the face." Ash also said M.H. took a swing at him, "possibly hit or clipped his head," and took his debit card and other property. But Officer Marroquin did not see any injuries on Ash, and M.H. did not have any of Ash's property.

Officer Garry Idle arrived shortly after Officer Marroquin. When Officer Idle spoke with M.H., "[s]he was upset in regards to what had happened that morning." M.H. reported she had been head-butted and thought she had a loose tooth. After having M.H. lift her upper lip, Officer Idle observed "some swelling, bruising and

redness." Pictures showed she had an abrasion on the inside of her lip. When Idle spoke with Ash, he confirmed "things had gotten physical between the two this morning," though by then, he was denying having head-butted M.H. According to both officers, Ash had M.H.'s cell phone and car keys on him when they arrived.

Ash testified on his own behalf. He explained that, on the morning he was arrested, he had wanted to go get something for breakfast but couldn't because his phone was gone. He asked M.H. for her phone so that he could try to find his by calling it from M.H.'s phone. Ash gave up looking after a few minutes and then went to get his debit card, identification, and keys. But those were missing too. M.H. got up to help Ash look for his missing items. While they were looking, Ash still had M.H.'s phone and saw a notification come through on it. So he began reading through her text messages. When M.H. noticed Ash scrolling through her phone, he said that "she got upset and she . . . runs toward me like, hey, you're looking through my phone." Ash continued:

> So when she come towards me, I'm at the bottom step [to the living room]. She's at the top step. She stumbled. I duck . . . and when I did, I came up with my head. . . . That's when she tried to grab her phone. And when she's falling, the bottom of her mouth hit my head.

He agreed they then "tussle[d]" over the phone. But Ash denied ever pushing M.H. in the head with his finger, intentionally head-butting her, or pushing her to the ground. He also denied having M.H.'s car keys or cell phone when she left the house.

Ash was charged by trial information with domestic abuse assault causing bodily injury. Before trial, Ash applied for a subpoena for M.H.'s mental-health records so that the court could conduct an in camera review. In support of his

application, Ash stated he believed that M.H.'s "mental health contributed to her behavior and statements made on or about March 12, 2021." The State resisted, arguing that Ash had not met the threshold requirements of Iowa Code section 622.10(4) (2021) for an in camera review of privileged records in a criminal case.

A hearing set for August 19 was continued to the next week "to allow the defendant time to attempt to try to find some specific records." At the hearing, the defense simply submitted that M.H. had been diagnosed with depression after visiting a hospital, for which she was prescribed citalopram hydrobromide; she did follow-up visits with a nurse practitioner; and she was later prescribed alprazolam. Based on that, the defense argued:

> [W]e do believe at this point in time that we have shown that we know that there is mental health issues at play; that we know where this is at and we do believe at this point in time that based on looking at the—at the documents that the court could find exculpatory evidence that we would not be able to get without the court doing an in camera review.

In response, the State explained the referenced hospital visit was in 2009, and the alprazolam prescription was from a 2020 appointment, with no evidence she was "continuously being prescribed these medications."

The transcript shows the defense provided the court with some of M.H.'s medical records during the hearing.[2] After reviewing those records, the court found "right off the chute things from 2009 or 2010 . . . are way too distant in time to have any relevant information in this case for possible exculpatory." The court then questioned the defense as to whether alprazolam was a medication for mental-

---

[2] They were not made part of the record, and the district court expressed concern as to how Ash obtained them.

health issues; the defense was not sure. So, assuming it was, the court found Ash failed to "advance some good faith factual basis indicating how the records are relevant to [his] innocence." In response to that conclusion, the defense contended: "[W]e're saying that the defendant is innocent . . . because of [M.H.'s] mental health issues that she gets herself worked up and she charges these things or goes after the defendant, saying that certain things happen when they did not." As its only example, the defense said that when Ash and M.H. were living together, Ash "could not keep knives in the home because she would believe that . . . he was doing certain things and she would go after him with the knives."

The court stood by its position that Ash failed to establish the records would be relevant to his innocence. In its written ruling, the court found Ash did not show a reasonable probability that the victim's records—if any existed—would contain exculpatory information, or that Ash had a compelling need for the information. The court also noted it had "serious reservations about whether this request was made in good faith."

The matter proceeded to a jury trial, and Ash was found guilty as charged.[3] Ash filed a generic motion for a new trial, passively asserting the verdict was contrary to the law and evidence. The motion was considered at the time of sentencing, and Ash simply argued his version of the events was more credible than M.H.'s. The court denied the motion, and Ash appealed following the imposition of sentence.

---

[3] The court denied Ash's motion for judgment of acquittal following the State's case-in-chief and renewal of the motion following the close of evidence.

## II.    Standards of Review

Discovery rulings are generally reviewed for an abuse of discretion, but if they present constitutional issues, they are reviewed de novo. *State v. Leedom*, 938 N.W.2d 177, 185 (Iowa 2020). Challenges to the sufficiency of evidence are reviewed for legal error, *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022), while the denial of a motion for a new trial claiming the verdict was contrary to the weight of the evidence is reviewed for an abuse of discretion. *State v. Veal*, 930 N.W.2d 319, 328 (Iowa 2019).

## III.    Analysis

### A.    Subpoena

Ash argues "the district court abused its discretion in denying the application for subpoena." He claims that he "demonstrated a substantial likelihood that the victim's medical records would contain exculpatory evidence regarding her ability to perceive and accurately remember events."

As the supreme court recently stated:

> Iowa Code section 622.10 generally prevents a mental health professional from disclosing "any confidential communication properly entrusted to the person in the person's professional capacity" associated with the patient's treatment. The statute specifically forbids disclosing these records to a defendant in a criminal action, with two exceptions.

*State v. Retterath*, 974 N.W.2d 93, 98 (Iowa 2022) (internal citation omitted). Our focus is on the second exception,[4] which "requires the defendant to demonstrate a 'reasonable probability' that the records are 'likely to contain exculpatory

---

[4] "The first exception requires a showing that the holder of the privilege voluntarily waived the confidentiality privilege." *Ratterath*, 974 N.W.2d at 98 (citing Iowa Code § 622.10(4)(a)(1)). There is no claim that M.H. waived her privilege.

information that is not available from any other source and for which there is a compelling need for the defendant to present a defense in the case.'" *Id.* at 98–99 (quoting Iowa Code § 622.10(4)(a)(2)(a)). The defendant has to meet this threshold showing before the court must conduct an in camera review to determine whether the records contain exculpatory information. *Id.*

Ash argues he met his burden. He contends "there were indications that the victim may have made up the alleged assault due to her mental health conditions" and, as a result, "[t]here was sufficient evidence that the victim's medical records might contain exculpatory evidence."

The problem is that the term "reasonable probability" means "a substantial, not just conceivable, likelihood." *State v. Thompson*, 836 N.W.2d 470, 484 (Iowa 2013) (cleaned up). And the term "likely" means "probable or reasonably to be expected." *Id.* (cleaned up). Here, Ash offered only a generalized belief that M.H.'s "mental health contributed to her behavior and statements made on or about March 12, 2021." *Accord State v. Garcia*, No. 20-0227, 2021 WL 210744, at *4 (Iowa Ct. App. Jan. 21, 2021) (finding a "generalized hope, rather than a reasonable probability," that a child's mental-health records would contain exculpatory information insufficient for in-camera review); *State v. Tyson*, No. 13-0272, 2014 WL 2346237, at *5 (Iowa Ct. App. May 29, 2014) (concluding a claim that a "*possible* side effect of a drug" the victim was prescribed "*may have affected*" his credibility does not meet the threshold requirement). He did not offer any "evidence showing a nexus between the issues at trial and the mental health treatment received by" M.H.—her decade-old diagnosis of depression and 2020 prescription for alprazolam, which he explains on appeal is prescribed for anxiety.

*Thompson*, 836 N.W.2d at 490. Nor was this a case that hinged on M.H.'s credibility, given Ash's admissions to the investigating officers and other corroborating evidence, like M.H.'s injury and the fact that, as M.H. claimed, Ash had her cell phone and keys on him when the officers arrived. *Cf. Leedom*, 938 N.W.2d at 188 (finding that the court abused its discretion in failing to conduct an in-camera review where the State "lack[ed] corroborating physical evidence of sexual abuse, and its case hinged on [the victim's] credibility").

"While our supreme court has encouraged 'judges in close cases to examine the records in camera,' this is not a close case." *Garcia*, 2021 WL 210744, at *4 (quoting *Leedom*, 938 N.W.2d at 188). Instead, this was an attempt to embark on a "fishing expedition in [M.H.'s] mental health records," which we do not allow. *Thompson*, 836 N.W.2d at 491. We conclude the "court correctly ruled [Ash] failed to make the showing required for an in camera inspection under section 622.10(4)." *Id.*

## B. Sufficiency of Evidence

For his next claim, Ash argues "there was insufficient evidence regarding the specific intent element of the offense." A verdict will be upheld if substantial evidence supports it. *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational [factfinder] that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). Evidence is not insubstantial just because it might support a different conclusion; the only question is whether the evidence supports the finding actually made. *See State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021).

In challenging specific intent, Ash relies solely on his testimony "that the injury to the victim was not caused intentionally" and his denial of head-butting M.H. when he spoke with Officer Idle. But in reviewing the sufficiency of the evidence, all evidence is considered, not just that of an inculpatory nature. *See State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017). Ash ignores M.H.'s testimony that he reared back and head-butted her during a confrontational situation. *See State v. Bedard*, 668 N.W.2d 598, 601 (Iowa 2003) ("[D]efendants will ordinarily be viewed as intending the natural and probable consequences that ordinarily follow from their voluntary acts."); *State v. Chatterson*, 259 N.W.2d 766, 769–70 (Iowa 1977) (noting "intent is seldom capable of direct proof, but may be shown by reasonable inferences drawn from the facts established"). The jury was provided with two versions of the events. It is within their province, not ours, "to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (citation omitted).

Because a "jury is free to believe or disbelieve any testimony as it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive," we reject Ash's sufficiency challenge. *State v. Liggins*, 557 N.W.2d 263, 269 (Iowa 1996); *accord State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022) ("Regardless, all of these disputed fact issues were for the jury to resolve, and they did resolve them, adverse to Mathis. Appellate review of the jury's verdict is not the trial redux.); *State v. Huntley*, No. 21-1244, 2022 WL 17481315, at *5 (Iowa Ct. App. Dec. 7, 2022) (rejecting sufficiency-of-the-evidence claim that was

based almost entirely on defendant's testimony and mostly consisted of attacks on the victim's credibility).

### C.     Weight of Evidence

Lastly, Ash mentions "[t]he verdict was against the weight of the evidence regarding the specific intent element of the offense."

The district court may grant a defendant's motion for a new trial when the verdict is contrary to the weight of the evidence. Iowa R. Crim. P. 2.24(2)(b)(6); *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). "A verdict is contrary to the weight of the evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *Ary*, 877 N.W.2d at 706 (quoting *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006)). This assessment "is broader than the sufficiency-of-the-evidence standard in that it permits the court to consider the credibility of witnesses." *Id.* But "it is also more stringent than the sufficiency-of-the-evidence standard in that it allows the court to grant a motion for a new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered." *Id.*

The district court concluded, having "viewed the trial in its entirety," that there was no basis to grant the motion for a new trial.[5] We agree "[t]his is not an extraordinary case where the evidence preponderates heavily against the verdict." *State v. Linderman*, 958 N.W.2d 211, 223 (Iowa Ct. App. 2021). More credible

---

[5] We note the court's oral ruling has the flavor of a sufficiency challenge—having referenced "substantial evidence"—rather than a weight challenge. Applying the wrong standard could be grounds for reversal and a remand to apply the correct standard, *see, e.g.*, *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998), but Ash does not raise that complaint on appeal.

evidence supports M.H.'s version of the events.  Her testimony tracked what she reported to law enforcement at the scene.  While Ash testified it was an accident resulting from him snooping through M.H.'s phone, he admitted to the officers that it got physical and told one that he head butted M.H.  We find no abuse of discretion in the court's denial of Ash's motion for new trial on weight-of-the-evidence grounds.

## IV.    Conclusion

We affirm Ash's conviction, concluding he failed to meet his burden as to his application for a subpoena, his conviction enjoys substantial evidentiary support, and the court did not abuse its discretion in denying his motion for a new trial.

**AFFIRMED.**